**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Monica Contreras,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>    Defendant. | No. CV 11-471-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Claimant's appeal from the Administrative Law Judge's ("ALJ") denial of Claimant's Title II application for disability insurance benefits and Title XVI application for supplemental security income based on disability (Doc. 1). The Court reverses the ALJ's decision to deny Claimant's applications and remands for further consideration.

**I.    PROCEDURAL BACKGROUND**

Claimant Monica Contreras previously filed Title II and Title XVI applications on September 16, 2005. (Record Transcript ("TR") 16.) She alleged the onset of disability was December 1, 2004. (*Id.*) Claimant's applications were denied on November 28, 2005, and again upon reconsideration on May 30, 2006. (*Id.*) Claimant did not further appeal the denial of her applications. (*Id.*)

Claimant filed her current applications, which are the subject of this appeal, on

1  February 10, 2007. (TR 15.) She alleged in both applications that her disability began on
2  October 15, 2006. (*Id.*) After Claimant's applications were denied initially on July 19, 2007
3  and again upon reconsideration on October 31, 2007, Claimant requested a hearing before
4  an ALJ. (*Id.*) Claimant appeared and testified at a hearing before the ALJ on October 21,
5  2008. (*Id.*) However, the ALJ continued the hearing so that updated medical evidence
6  regarding Claimant's mental status could be presented. (*Id.*) A supplemental hearing was
7  held on February 26, 2009, and the ALJ denied Claimant's applications on August 28, 2009.
8  (*Id.*) On January 11, 2011, the Appeals Council denied Claimant's request for a review of
9  the ALJ's decision. (TR 1-3.)

The ALJ denied Claimant's Title II application because the ALJ found that Claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act. (*Id.*) The ALJ denied Claimant's Title XVI application because the ALJ found that Claimant was not disabled under section 1614(a)(3)(A) of the Social Security Act. (*Id.*) Pursuant to 42 U.S.C. § 405(g), Claimant filed an appeal to this Court on March 11, 2011, seeking judicial review of the ALJ's decision. (Doc. 1.)

## II. FACTUAL BACKGROUND

Claimant alleged that she became disabled in October 2006 due to depression, anxiety, arthritis, and asthma. (TR 167.) Prior to the onset of disability, Claimant was a school bus driver, but quit allegedly because of her depression. (TR 29.) Claimant then worked as a driver for a company that transported patients to appointments, but she quit on October 15, 2006 because she claims she "got in the depression again." (TR 31.) Claimant has a general equivalency education and was 42 years old at the alleged onset of disability. (Doc. 13 at 4.) Although Claimant alleged in her disability applications that she suffers physical impairments, she appeals only the ALJ's decision regarding her mental impairments. (*Id.* at 5.) On appeal, Claimant argues the ALJ erred by rejecting the following: (1) the assessment of Claimant's treating physician; (2) the assessment of Claimant's examining psychologist;

1    and (3) Claimant's symptom testimony.[1] (*Id.* at 1.)

## III. LEGAL STANDARD

### A. Definition of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show, among other things, that he is "under a disability." 42 U.S.C. § 423(a)(1)(E). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). A person is "under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

### B. Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520; *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (describing the sequential process). A finding of "not disabled" at any step in the sequential process will end the ALJ's inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the ALJ at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

1. First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

2. If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [the claimant's]

---

[1] The relevant facts for each claim on appeal will be presented with the corresponding portion of the analysis section of this order.

- 3 -

physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities means the "abilities and aptitudes to do most jobs." *Id.* § 404.1521(b). Further, the impairment must either be expected "to result in death" or "to last for a continuous period of twelve months." *Id.* § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

A "special technique" is provided in the regulations for determining the severity of a mental impairment. *Id.* § 404.1520a(a). The first step is to evaluate the claimant's "pertinent symptoms, signs, and laboratory findings" in order to determine whether a medically determinable mental impairment exists. *Id.* § 404.1520a(b)(1). If a medically determinable mental impairment is found, then the ALJ must rate the degree of functional limitation resulting from the impairment. *Id.* § 404.1520a(b)(2). Functional limitation is assessed over the following four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* § 404.1520a(c)(3). Areas (1) through (3) are evaluated according to the following five-point scale: none, mild, moderate, marked, and extreme. *Id.* § 404.1520a(c)(4). Episodes of decompensation are evaluated according to the following four-point scale: none, one or two, three, and four or more. *Id.* If the ALJ determines the claimant's functional limitations in each of areas (1) through (3) is either "none" or "mild," and episodes of decompensation are "none," the claimant presumptively does not have a severe impairment. *Id.* § 404.1520a(d)(1). If the claimant does not have a severe impairment, the claimant is not disabled.

3. Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments specifically listed in the regulations. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is found disabled without considering the claimant's age, education, and work experience. *Id.* § 404.1520(d). For a mental impairment, the ALJ will compare the medical findings regarding the claimant's impairment and the claimant's functional limitation rating to the criteria of the corresponding listed

mental impairment in the regulations. *Id.* § 404.1520a(d)(2). If the impairment or impairments do not meet or equal a listed impairment, before proceeding to the next step, the ALJ will make a finding regarding the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the] record." *Id.* § 404.1520(e). A claimant's "residual functional capacity" is the most he can do despite all his impairments, including those that are not severe, and any related symptoms. *Id.* § 404.1545(a)(1-2).

4. At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." *Id.* § 404.1520(a)(4)(iv). To make this determination, the ALJ compares its "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* § 404.1520(f). If the claimant can still perform the kind of work the claimant previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

5. At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. *Id.* § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's residual functional capacity, together with vocational factors (age, education, and work experience). *Id.* § 404.1520(g)(1). If the claimant can make an adjustment to other work, then he is not disabled. If the claimant cannot perform other work, he will be found disabled. As previously noted, the ALJ has the burden of proving the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

### C. Credibility of Medical Testimony

When evaluating the medical evidence throughout this five-step process, the ALJ must give appropriate consideration based on the source of testimony. The ALJ should afford the most weight to the treating physician's opinion, a lesser amount of weight to an examining physician's opinion, and an even lesser amount to a physician who has neither treated nor examined the claimant. *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

If the treating physician's opinion is not contradicted by another physician, it is given controlling weight and may be rejected only for "clear and convincing" reasons supported

by substantial evidence in the record. *Id.* at 632 (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). However, even if there is conflicting medical evidence, the ALJ may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Id.*

Similarly, the ALJ may only reject the uncontradicted opinion of an examining physician by presenting clear and convincing reasons supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999). If the examining physician's opinion is contradicted, the ALJ must still offer specific and legitimate reasons for rejecting the opinion. *Id.* If an examining physician's opinion differs from the treating physician's opinion, and both opinions are based on the same medical findings and differ only in their ultimate conclusions, then the treating physician's opinion is still entitled to controlling weight. *Orn*, 495 F.3d at 632. However, if the examining physician's conflicting opinion is based on independent findings, e.g., a different diagnosis or findings from different objective medical tests, then the treating physician's opinion is no longer given controlling weight but is still entitled to deference. *Id.* at 632-33.

Additionally, if a medically determinable impairment is found, the ALJ must give appropriate consideration to the claimant's personal symptom testimony. *See Orn*, 495 F.3d at 635. To discredit the claimant's testimony, the ALJ must provide "specific, cogent reasons for the disbelief." *Id.* (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)) (internal quotation marks omitted). If there is not affirmative evidence that the claimant is a malingerer, then the reasons for discrediting a claimant's testimony must be "clear and convincing." *Id.* at 635. "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct . . . ." *Orn*, 495 F.3d at 636 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

**IV.    THE ALJ'S DECISION**

The ALJ used the five-step process to evaluate Claimant's claim. (TR 16.) First, the ALJ found that since the alleged onset of disability, Claimant has not engaged in any

substantial gainful activity. (TR at 22.) Second, in addition to physical impairments that are not relevant to Claimant's appeal, the ALJ found Claimant has two severe medically determinable mental impairments: major depressive disorder ("MDD") and generalized anxiety disorder ("GAD"). (TR 23.) However, under step three, the ALJ found that neither mental impairment alone or in combination with each other equal an impairment listed in the regulations. (*Id.*) The ALJ determined that Claimant had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a). (*Id.*) According to the ALJ, "[t]he claimant has moderate limitations in social functioning and maintaining concentration, persistence or pace in a high stress environment, but has minimal limitations otherwise." (*Id.*) Finally, under steps four and five, the ALJ found that although Claimant could not perform any past relevant work, Claimant's residual functional capacity allowed her to perform "jobs existing in significant numbers in the national economy." (*Id.*) These jobs include: assembler, quality control worker, parking lot attendant, and security monitor. (*Id.*) The ALJ concluded that Claimant is not disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. (*Id.*)

## V. STANDARD OF REVIEW

A district court

> may set aside a denial of disability benefits only if it is not supported by substantial evidence or if it is based on legal error. Substantial evidence means more than a mere scintilla but less than a preponderance. Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion. Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's decision must be upheld.

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation and quotation marks omitted). "The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). The Court will uphold the ALJ's findings "if supported by inferences reasonably drawn from the record." *Batson v. Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). However, the Court must consider the entire record as a whole and "may not affirm simply by isolating a

'specific quantum of supporting evidence.'" *Orn*, 495 F.3d at 630 (quoting *Robbings v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

## VI. ANALYSIS

### A. Claimant's Treating Physician

#### 1. Opinion of Treating Physician

In February 2007, Dr. V. Abhyanker at Southwest Behavioral Health Services diagnosed Claimant with MDD and GAD and assessed Claimant as having a global assessment of functioning ("GAF") score of 45.[2] (TR 328.) The following are Dr. Abhyanker's subsequent diagnoses and GAF scores for Claimant: May 2007—MDD, GAD, with a GAF score of 45; June 2007—MDD, with a GAF score of 45; August 2007—MDD, GAD, with a GAF score of 50; September 2007—MDD, GAD, with a GAF score of 50; and November 2007—MDD, GAD, with a GAF score of 55. (TR 321-24.)

During Claimant's September 2007 visit, Dr. Abhyanker evaluated Claimant's ability to perform work-related activity "on a sustained basis in a routine work setting." (TR 317.) The assessment used by Dr. Abhyanker defined a moderate impairment as one "which affects but does not preclude ability to function" and a moderately severe impairment as one "which seriously affects ability to function." (*Id.*) Dr. Abhyanker assessed Claimant as moderately

---

[2] The GAF rating is used by clinicians to assess an individual's overall level of functioning. Am. Psychiatric Ass'n *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text. rev. 2000). The rating scale ranges from zero to one hundred (0-100) and ascribes different levels of functioning to each group of 10. *Id.* A score of below 10 indicates behavior that is a persistent danger of severely hurting self or others and a score of above 90 indicates superior functioning in a wide range of activities. *Id.* A GAF score between 41 and 50 reflects "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* A score between 51 and 60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.* A score between 61 and 70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork)." *Id.*

1  impaired in the following areas: ability to understand, carry out, and remember instructions;
2  responding appropriately to supervision; responding appropriately to co-workers; and
3  performing simple, varied, and repetitive tasks. (*Id.*) Dr. Abhyanker assessed Claimant to
4  have moderately severe impairments in the following areas: responding to customary work
5  pressures; performing complex tasks; and completing a normal workday/workweek without
6  interruptions from psychologically based symptoms and performing at a consistent pace
7  without an unreasonable number/length of rest periods. (*Id.*)

8  Dr. Abhyanker concluded that Claimant could not handle a full-time job. (TR 318).
9  A vocational expert, George Bluth, testified at Claimant's hearing that a person with the
10 functional limitations assessed by Dr. Abhyanker would not be able to work on a sustained
11 basis. (TR 56-58.)

12 After Claimant's November evaluation with Dr. Abhyanker, Nurse Practitioner Carol
13 Finney examined Claimant. In February 2008, Finney diagnosed Claimant with MDD,
14 recurrent, moderate and panic disorder without agoraphobia. (TR 673.) After the February
15 2008 evaluation, Finney continued to diagnose Claimant with panic disorder without
16 agoraphobia, but diagnosed Claimant as having MDD, recurrent, in partial remission. (TR
17 662, 664, 667.) Finney assessed Claimant with the following GAF scores: February
18 2008—55; March 2008—60; May 2008—60; and August 2008—55. (TR 662, 664, 667,
19 673.)

20           2.     ALJ's Consideration of Treating Physician's Opinion

21 The ALJ did not provide specific and legitimate reasons supported by substantial
22 evidence in the record for rejecting Dr. Abhyanker's opinion.[3] Instead, the ALJ misstated
23 Dr. Abhyanker's opinion and accepted the testimony of Dr. Jasinski, the non-examining

---

[3] It is arguable whether Dr. Abhyanker's opinion is sufficiently contradicted to justify using the "specific and legitimate" standard. However, the ALJ's reasons do not meet this lesser standard, so it is not necessary to determine whether the ALJ's reasons are "clear and convincing."

- 9 -

psychologist.[4] (TR 20). The ALJ failed to accord appropriate deference to Dr. Abhyanker's opinion.

First, the ALJ stated that, according to Dr. Abhyanker on September 4, 2007, Claimant wanted to "get disability benefits so she could quit working." (*Id.*) However, as conceded by the Commissioner (Doc. 14 at 13 n. 5), this misconstrued Dr. Abhyanker's assessment. Dr. Abhyanker instead stated that Claimant wanted benefits as she cannot work, meaning *because* she cannot work. (TR 321). Dr. Abhyanker also stated on that same date that Claimant could not handle a full-time job. (TR 318). Under certain circumstances, the ALJ's error may be considered harmless. However, because the ALJ offered minimal evidence for rejecting Dr. Abhyanker's opinion, the harm resulting from this error is magnified.

Second, the ALJ cited the evaluation of Nurse Practitioner Carol Finney on March 11, 2008 as a reason for rejecting Dr. Abhyanker's opinion. (TR 20). Finney describes Claimant in an improved condition with a GAF score of 60, but ultimately diagnoses Claimant with MDD and panic disorder. (*Id.*) Although Finney's evaluation is evidence that Claimant may have been in an improved condition at the time of the evaluation, it is not sufficient evidence to completely discount Dr. Abhyanker's assessment six months earlier. The portions of Finney's evaluation that the ALJ cited do not necessarily contradict Dr. Abhyanker's prior conclusions, and Finney never made any conclusions regarding Claimant's ability to work. (*Id.*)

Finally, the ALJ relied heavily on Dr. Jasinski, who neither treated nor examined Claimant. (*Id.*) According to the ALJ, Dr. Jasinski's "opinions are consistent with the overall evidence of record with regard to the claimant's mental impairments." (*Id.*) The ALJ

---

[4] The Commissioner cites state agency psychologist Eugene Campbell's opinion as also contradicting Dr. Abhyanker's opinion. (Doc. 14 at 11 n.4.) Dr. Campbell reported that Claimant had the functional ability to handle full-time employment in a setting with a slow pace and low demand. (TR 279.) However, the ALJ never mentioned Dr. Campbell's opinion and therefore, presumably did not rely on Dr. Campbell's opinion.

1  cited Dr. Jasinski's testimony that Claimant had MDD in partial remission and that
2  Claimant's mental condition gradually improved. (*Id.*) However, Dr. Jasinski, like Finney,
3  did not make any conclusions during the hearing regarding Claimant's ability to work. (TR
4  51-54.) Dr. Jasinki's opinion should be adopted by the ALJ only if there is insufficient
5  evidence to support a treating or examining physician's testimony. Instead, the overall
6  evidence of record offers sufficient support for Dr. Abhyanker's conclusions. For example,
7  the testimony of the vocational expert at the February 2009 hearing supports Dr.
8  Abhyanker's assessment of Claimant's inability to work. (TR 56-58.) Accordingly, the ALJ
9  provided insufficient support for rejecting Dr. Abhyanker's opinion.

### B. Claimant's Examining Physician

#### 1. Opinion of Examining Physician

The Social Security Administration referred Claimant to Dr. Brent B. Geary for an examination in connection with Claimant's applications for benefits. (TR 266.) Dr. Geary diagnosed Claimant with MDD, recurrent, moderate, and possible borderline intellectual functioning. (TR 269.) Dr. Geary also noted that Claimant did not have a personality disorder, but demonstrated distinct depressive and dependent features. (*Id.*) Dr. Geary summarized his opinion of Claimant's functioning ability:

> [Claimant] seems capable of remembering work-like procedures and simple job instructions. She can evidently sustain an ordinary routine without special supervision, work in proximity to others without being distracted by them, render simple work-related decisions, and ask for assistance as needed. [Claimant] also is able to respond appropriately to changes and hazards in the work environment and to travel to unfamiliar places alone. There appear to be **mild limitations** in her capacity to carry out short and simple job instructions, respond appropriately to criticism from supervisors, get along with coworkers without exhibiting behavioral extremes, adhere to basic standards of neatness and cleanliness, and independently establish realistic goals for herself. [Claimant] seems **moderately limited** in her ability to carry out detailed and complex job instructions, perform activities within a schedule, maintain regular attendance, complete a normal work week without interruption from psychological symptoms, and persistently deal with the public. The prognosis in this case is guarded. [Claimant] does seem capable of independently managing benefits, though she apparently entrusts this function to her daughter.

(*Id.*) (emphasis added). The vocational expert testified at Claimant's hearing that the limitations assessed by Dr. Geary would prevent Claimant from working. (TR 56-58).

2. ALJ's Consideration of Examining Physician's Opinion

The ALJ erred by not sufficiently addressing Dr. Geary's opinion. Dr. Geary's assessment in combination with the vocational expert's testimony countered the ALJ's finding that Claimant can work, but the ALJ never explicitly rejected Dr. Geary's opinion. Although the ALJ acknowledged Dr. Geary's assessment, the ALJ never stated the effect Dr. Geary's assessment had on the ALJ's findings, nor did the ALJ mention the vocational expert's opinion of Dr. Geary's assessment. (TR 19.)

The Commissioner concedes that the ALJ did not adequately address Dr. Geary's opinion, but argues that this was harmless legal error. (Doc. 14 at 15-16). The Court disagrees. The ALJ may only reject the uncontradicted opinion of an examining physician by presenting clear and convincing reasons. *Regennitter*, 166 F.3d at 1298. If the examining physician's opinion is contradicted, the ALJ must still offer specific and legitimate reasons for rejecting the opinion. *Id.* Here, the ALJ did not state whether Dr. Geary's opinion was contradicted. Accordingly, the ALJ did not reject Dr. Geary's testimony for sufficient reasons.

**C. Claimant's Personal Symptom Testimony**

1. Claimant's Testimony

Claimant reported in an April 2007 Function Report that she primarily ate, slept, and watched television but sometimes took care of her grandson on the weekends. (TR 174, 175.) She wrote that she had problems sleeping and remembering things. (TR 175.) She checked that her "illnesses, injuries, or conditions affect" the following: lifting, squatting, bending, standing, reaching, walking, kneeling, stair climbing, seeing (sometimes), memory, completing tasks, concentration, understanding, and using her hands. (TR 179.) According to the function report, Claimant's "illnesses, injuries, or conditions" do not affect her ability to talk, hear, follow instructions, get along with others and authority figures. (TR 179-80.)

In Claimant's September 2007 Function Report, Claimant reported that she still watches television, but also crochets and cleans up around the house. (TR 202, 206.) Claimant checked that her "illnesses, injuries, or conditions" still affect her ability to do the

same activities as she claimed in the April 2007 report with the addition of hearing and following instructions. (TR 207.) She again claimed that she was not limited in the activities of talking and getting along with others and authority figures. (TR 207-08.)

In Claimant's brief testimony at the October 2008 administrative hearing, Claimant testified that she quit working in October 2006 because she "got in the depression again" and "it was just getting too much for [her] to concentrate." (TR 29, 31.)

### 2. ALJ's Consideration of Claimant's Testimony

The ALJ did not provide sufficient reasons for discrediting claimant's testimony. There is not affirmative evidence that Claimant is a malingerer, thus the ALJ must set forth clear and convincing reasons for discrediting Claimant's testimony. *Orn*, 439 F.3d at 635. The ALJ found that "claimant's allegations of a complete inability to work are not wholly credible based on the medical history, findings made on examination, and reports of the treating and examining sources." (TR 23.) However, the ALJ only specifically addressed Claimant's testimony regarding her physical impairments. (TR 21.) The ALJ also cited Claimant's failure to attend a physical medicine consultative examination scheduled by the Arizona State agency and her failure to respond to close out letters as evidence detracting from her credibility. (*Id.*) These reasons are insufficient to satisfy the ALJ's burden of providing clear and convincing reasons to discredit Claimant's testimony regarding her mental impairments.

### D. Further Enhancement of the Record is Necessary

Claimant requests that the Court remand for an immediate award of benefits because the ALJ failed to provide legally sufficient reasons for rejecting the evidence. However, this is only one prong of the test as to whether a Court should remand for an immediate award of benefits. "The district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such

evidence credited." *See Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004)).

Here, a remand for an immediate award of benefits would be inappropriate because it is unclear from the record whether Claimant is disabled as defined by the statute. As discussed above, there is conflicting medical evidence about Clamant's medical condition from Claimant's treating physician and the Nurse Practitioner that examined Claimant. For instance, there is medical evidence, contained in Dr. Abhyanker's records and Nurse Practitioner Finney's records that Claimant may have suffered a temporary, but not permanent, disability entitling her to benefits. Further, the vocational expert's testimony is somewhat ambiguous.[5] The Court recognizes that there is a significant interest in expediting disability claims and does not enter into its decision to remand for further proceedings lightly. However, the Court cannot, as a matter of law, decide from the record as it stands that Claimant suffers from a disability that would entitle her to benefits.

## VII. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that the decision of the Administrative Law Judge is **REVERSED** and **REMANDED** for further proceedings consistent with this Order.

DATED this 18th day of November, 2011.

James A. Teilborg
United States District Judge

---

[5] The vocational expert both opined that Claimant was able to perform sedentary, unskilled work (as discussed more fully above) and that a hypothetical individual of claimant's age, education, and work experience with similar medical records would be unable to work on a sustained basis. Because this Court cannot itself further develop the record by further examining the vocational expert on this seeming inconsistency, remanding for further development of the record is appropriate.